AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*September 12, 2025*

Nathan Ochsner, Clerk of Court

United States of America
v.
CARL WHEELER,
MIGUEL ORLANDO JACKSON, and
ALRICK WINSTON WATSON

*Defendant(s)*

Case No. **4:25-mj-0539**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 5, 2025 to present in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 846 | Conspiracy to Possess With Intent to Distribute a Controlled Substance |
| Title 21, U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:
see attached.

☑ Continued on the attached sheet.

*Complainant's signature*
DEA Special Agent Terence J. Moore
*Printed name and title*

Sworn to and signed by telephone.

Date: September 12, 2025

*Judge's signature*
Yvonne Y. Ho, United States Magistrate Judge
*Printed name and title*

City and state: Houston, Texas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | CASE NO. **4:25-mj-0539** |
| | § | |
| VS. | § | |
| | § | |
| CARL WHEELER, | § | |
| MIGUEL ORLANDO JACKSON, and | § | |
| ALRICK WINSTON WATSON | § | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Terence J. Moore, Special Agent of the Drug Enforcement Administration (DEA) being duly sworn, depose and state that:

1. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been a DEA Special Agent since 2010 and am currently assigned to the Houston Division Office (HDO), investigating controlled substances trafficking and related crimes. I have received courses of instruction from DEA relative to the investigative techniques and the conducting of drug investigations. I have participated in and have conducted investigations which have resulted in the arrests of individuals who have smuggled, received, and distributed controlled substances, including cocaine, as well as the seizure of illegal drugs and proceeds of the sale of those illegal drugs. In addition, I have conducted, in connection with these and other cases, follow up investigations concerning the concealment of drug produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills

and records, photographs and bank checks, as related to drug trafficking. As a result of my training and investigative experience, Affiant has become familiar with the operations of Transnational Criminal Organizations and Drug Trafficking Organizations (hereinafter DTO) operating within South Texas including, but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones, use of counter surveillance techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

For the reasons stated below, I submit that there is probable cause to believe that CARL WHEELER, MIGUEL ORLANDO JACKSON and ALRICK WINSTON WATSON have violated Title 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Deliver a Controlled Substance, to wit: methamphetamine (actual) and fentanyl; and Title 21 U.S.C. § 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit: methamphetamine (actual) and fentanyl.

## PROBABLE CAUSE

4. In July 2025, Texas Department of Public Safety Criminal Investigative Division (DPS-CID), assisted by agents of the Drug Enforcement Administration (DEA) and officers of the Houston Police Department (HPD), initiated a drug investigation targeting individuals residing at the OYO Hotel, located at 14833 Katy Freeway, Houston, Texas. A Source of Information (SOI) had identified Carl WHEELER as a distributor of cocaine, methamphetamine, fentanyl and

counterfeit pills from the OYO Hotel. The SOI further stated that WHEELER was being assisted by other residents of the OYO Hotel. Agents were able to place a pole camera near the OYO Hotel to observe alleged narcotic trafficking and identify those responsible.

5. During the course of the investigation, a DPS Confidential Informant (CI) was introduced to WHEELER as a potential buyer/customer. On August 5, 2025, agents with the assistance of the CI, conducted a controlled purchase of approximately 1 kilogram of suspected crystal methamphetamine and 2 ounces of suspected fentanyl. Prior to the buy, the CI and CI's vehicle were searched for narcotic or weapons, which yielded negative results. The CI, in the presence of agents, placed a phone call to WHEELER at a number known to be utilized by WHEELER, to confirm the pending deal. During the call, WHEELER instructed the CI to go to room 246 to complete the transaction. The CI was provided a recording device to preserve evidence and ensure the CI's safety. The CI was also provided $5,400 to make the purchase of the suspected crystal methamphetamine and the suspected fentanyl. Prior to the transaction, agents established surveillance around the OYO hotel specifically focused on room 246. At approximately 2:24 p.m., officers observed the CI enter room 246.

6. While the CI was inside the room, agents monitoring the pole camera witnessed JACKSON exit room 303. Approximately 20 minutes later, JACKSON was observed entering room 246 carrying a black bag.

7. At approximately 2:41 p.m., the CI was observed exiting room 246 carrying a small box. Agents maintained surveillance of the CI until he/she was met at a predetermined location. The CI provided agents the box which contained 2 smaller bags (1 containing suspected crystal methamphetamine and 1 containing suspected fentanyl). During the CI debrief, the CI stated that once in room 246, WHEELER handed him/her a clear plastic bag containing a white powdery

substance, propounded by WHEELER to be fentanyl. The CS stated that he/she (CI) handed WHEELER $5,400 for the purchase of the suspected fentanyl and the suspected crystal methamphetamine. The CI also stated that a large Black male, later identified as Alrick Winston WATSON, was in room 246 during the transaction. The CI stated that WHEELER handed the money to WATSON to confirm the count. It appeared to the CI that the narcotics belonged to WATSON. The CI also positively identified JACKSON as the individual who entered the room with the black bag while he/she was in the room. The CI stated that JACKSON opened the black bag and handed WHEELER the suspected crystal methamphetamine, which WHEELER then handed to the CI, after which the CI departed.

8. The transaction, which was recorded by video and audio, was reviewed by your affiant who found the account of the transaction provided to agents by the CI was accurate.

9. Both the suspected crystal methamphetamine and the suspected fentanyl were submitted to the DEA South Central Lab for analysis. The suspected crystal methamphetamine purchased on August 5, 2025, was determined to be methamphetamine (actual) with a weight of 988.6 grams and a purity level of 99%. The results for the suspected fentanyl are still pending. However, based upon your affiant's training, experience and knowledge of this investigation, the suspected fentanyl purchased on August 5, 2025, is similar in appearance to other fentanyl from other investigations which was determined through analysis to contain fentanyl and the price paid for the suspected fentanyl in this investigation is consistent with the price paid in other investigations for suspected fentanyl which was subsequently determined through analysis to be fentanyl.

10. On August 20, 2025, law enforcement officers utilizing the same CI conducted a controlled purchase of approximately 552 grams of suspected fentanyl, a Glock handgun with a

machine conversion device affixed to it and a "ghost" handgun from WHEELER.

11.     Prior to the transaction, the CI and CI's vehicle was searched for guns/contraband yielding negative results. The CI was provided a recording device to preserve evidence and ensure the CI's safety. Agents also provided the CI with $13,500 to purchase the suspected fentanyl and 2 pistols. The CI, in the presence of agents, placed a phone call to WHEELER at a number known to be utilized by WHEELER, to confirm the pending deal. WHEELER advised the CI to meet him at the OYO Hotel in room 220.

12.     Prior to the transaction, agents established surveillance around the OYO hotel specifically focused on room 220. At approximately 2:17 p.m., officers observed the CI enter room 220. The recording device captured the CI and WHEELER discussing the purchase of the narcotics. The recording device also captured WHEELER informing the CI of how the "switch" on the pistol works and to be careful while handling the firearms. Agents observed the CI, followed by WHEELER who was carrying a large white plastic bag with what appeared to be a brick shaped object inside, depart room 220 and walk back to the CI's vehicle. After WHEELER transferred possession of the bag to the CI, the CI drove from the scene. After the transaction, the CI met with agents at a predetermined location and turned over the white plastic bag, which contained an orange shoe box. The transaction, which was recorded by video and audio, was reviewed by your affiant who found the account of the transaction provided to agents by the CI was accurate.

13.     Inside the shoe box were four (4) clear plastic bags containing the suspected fentanyl and a small box which contained the two handguns.

14.     The suspected fentanyl was submitted to the DEA South Central Lab for analysis. The results of that analysis are still pending. However, based upon your affiant's training,

experience and knowledge of this investigation, the suspected fentanyl purchased on August 20, 2025, is similar in appearance to other fentanyl from other investigations which was determined through analysis to contain fentanyl and the price paid for the suspected fentanyl in this investigation is consistent with the price paid in other investigations for suspected fentanyl which was subsequently determined through analysis to be fentanyl.

15. Agents also confirmed that of the two pistols, one was modified with a machinegun conversion device which converted it to fire fully automatic. The other pistol, the "ghost" gun, did not have a serial number. Based on the affiant's knowledge and training, a "ghost" gun is described as a gun containing no identifiable serial numbers or markings of origin, making it untraceable through law enforcement data bases.

## CONCLUSION

Based on these facts, I believe probable cause exists for the issuance of a complaint and arrest warrant for CARL WHEELER, MIGUEL ORLANDO JACKSON and ALRICK WINSTON WATSON for violations of Title 21 U.S.C. § 846 – Conspiracy to Possess with Intent to Deliver a Controlled Substance, to wit methamphetamine and fentanyl; and Title 21 U.S.C. § 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit methamphetamine and fentanyl.

Terence J. Moore
Special Agent, DEA

The foregoing affidavit was sworn to telephonically on this 12th day of September 2025 and I find probable cause.

YVONNE Y. HO
United States Magistrate Judge